UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KILYAM M., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 22-cv-3982 |
| v. | ) |
| | ) Magistrate Judge Keri L. Holleb Hotaling |
| MARTIN J. O'MALLEY, Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kilyam M.[1] ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Parties have filed cross motions for summary judgment.[2] For the reasons detailed below, Plaintiff's Motion for Summary Judgment (Dkt. 18) is GRANTED and Defendant's motion (Dkt. 19) is DENIED. The case is remanded for further proceedings consistent with this opinion.

1. **Social Security Regulations and Standard of Review**

A court's scope of review in disability cases is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2] The Court has construed "Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security" (Dkt. 18) as a motion for summary judgment.

questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, is undermined by legal error, or "is so poorly articulated as to prevent meaningful review." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003), *Steele*, 290 F.3d at 940; *see also*, 42 U.S.C. § 405(g).

**2.      Procedural Background and ALJ Decision**

On December 30, 2019, Plaintiff protectively filed a claim for disability insurance benefits ("DIB") and a claim for supplemental security income ("SSI"), each with an alleged onset date of January 4, 2019. (Administrative Record ("R.") 15.) Plaintiff's claim was denied initially and upon reconsideration, after which Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Subsequently, on November 29, 2021, the ALJ issued an unfavorable decision finding Plaintiff not disabled under the Social Security Act. (R. 15-26.) On June 1, 2022, the Appeals Council denied Plaintiff's request for review (R. 1-6), leaving the ALJ's decision as the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Plaintiff, through counsel, filed the instant action on August 1, 2022, seeking review of that decision. (Dkt. 3.) This matter was assigned to Judge Holleb Hotaling when she assumed the federal bench on August 11, 2023. (Dkt. 23.)

The ALJ's decision followed the familiar five-step analytical process required by 20 C.F.R. § 416.920. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (R. 17.) At Step Two, the ALJ concluded Plaintiff had the severe impairments of depression; anxiety; bipolar disorder; post-traumatic stress disorder ("PTSD"); panic disorder;

degenerative disc disease; right ankle tendinitis; Achilles tendinitis; obesity; and peroneal tendonitis. (R. 17-18.) The ALJ determined Plaintiff's gastroesophageal reflux disease; irritable bowel syndrome; headaches; and elevated blood pressure were nonsevere. (R. 18.) The ALJ found Plaintiff's right hip pain and right rotator cuff pain to be non-medically-determinable impairments. (*Id.*) At Step Three, the ALJ concluded Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairment. (R. 18-20.) The ALJ next found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following restrictions: no climbing of ladders; occasional stooping, balancing, kneeling, crouching, crawling, and climbing of stairs; frequent handling in all directions, bilaterally; and Plaintiff is able to understand, remember, and carry out simple, routine tasks. (R. 20.) At Step Four, the ALJ concluded Plaintiff was unable to perform her past relevant work. (R. 24.) At Step Five, the ALJ found that other jobs in the national economy exist that Plaintiff can perform, considering her age, education, work experience, and RFC. (R. 25-26.) These findings led the ALJ to conclude Plaintiff is not disabled as defined by the Social Security Act. (R. 26.)

**3.      Discussion**

Plaintiff alleges, *inter alia*, that the ALJ made serious factual errors in evaluating the medical assessment opinion from Plaintiff's treating advanced practice registered nurse ("APRN"), Derek Wolken. The Court agrees and remands on this basis.

On March 25, 2020, APRN[3] Wolken completed a physical capacity questionnaire on behalf of Plaintiff. (R. 501-03.) APRN Wolken indicated he had treated Plaintiff for chronic back pain and somatic dysfunction every two months since 2015. (R. 501.) Among other limitations, APRN Wolken

---

[3]     Advanced practice registered nurses ("APRNs") are registered nurses educated at the Masters or post-Masters level and in a specific role and patient population. APRNs are prepared by education and certification to assess, diagnose, and manage patient problems, order tests, and prescribe medications – duties normally performed by physicians – whereas registered nurses ("RNs") are not. APRNs have greater autonomy and responsibility due to their advanced education, training, and experience. National Council of State Boards of Nursing ("NCSBN"), *APRNs in the U.S.*, https://www.ncsbn.org/nursing-regulation/practice/aprn.page (last accessed January 22, 2024).

believed Plaintiff could only sit for two hours total and stand/walk for two hours total in an eight-hour workday. (R. 502.) He also opined Plaintiff would have frequent interference with concentration and would miss approximately four days of work per month. (R. 501, 503.)

In his analysis of APRN Wolken's opinion, the ALJ misidentifies APRN Derek Wolken as "Walden Fuller" and admits he does not know APRN Wolken's "title or relationship" to Plaintiff.[4] (R. 23.) This is troubling, but not fatal to upholding the ALJ's decision. However, the ALJ's analysis of the content of APRN Wolken's opinion suffers from factual errors requiring remand.

The ALJ began his analysis of APRN Wolken's assessment by finding the "opined limitation of sedentary work persuasive." (R. 23.) Plaintiff argues the ALJ is incorrect in classifying Mr. Wolken's opinion as indicative of sedentary work. The Court agrees that APRN Wolken's limitation to sitting for two hours and standing/walking two hours total in a workday is inconsistent with the regulatory definition of sedentary work (or any full-time work activity), because APRN Wolken restricted Plaintiff to performing only four hours of work total in an eight-hour workday.

The Code of Federal Regulations defines sedentary work as follows:

> Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 CFR § 404.1567(a). The Social Security Rulings also provide further relevant guidance on the physical exertion requitements:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.

---

[4] The signature on the Physical Residual Functional Capacity Questionnaire filled out by APRN Wolken is unclear and the transmittal cover sheet completed by Plaintiff's counsel identifies "D Walken" as having completed the form. (R. 503-04.) The Social Security Agency identified the form as coming from Walden Fuller (R. 29) and the ALJ used that name without comment. Plaintiff asserts the form was completed by Derek Wolken, APRN and provides the Erie Family Health webpage as additional evidence that Derek Wolken is the correct name of the individual whose opinions are in the questionnaire. *See* https://www.eriefamilyhealth.org/medical-provider/derek-wolken/ (last accessed January 23, 2024).

SSR 83-10.

The ALJ inaccurately represented APRN Wolken's opinion as indicating Plaintiff could perform sedentary work on a full-time, continuing basis which it does not. The ALJ based his RFC, in part, on his inaccurate perception of APRN Wolken's opinion. This was erroneous because an RFC assessment must determine an individual's abilities on a continuing basis, for five days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). Moreover, the Commissioner never really confronts or explains the ALJ's erroneous determination that the "opined limitations for sedentary work" were persuasive when APRN Wolken restricted Plaintiff to performing only four hours of sitting or walking/standing work total in an eight-hour workday. (*See* Dkt. 20, p. 2.) Although APRN Wolken expressed additional limitations beyond the stand/walk limitation, these additional limitations (irrespective of whether the ALJ found them convincing) in no way helped classify APRN Wolken's opinions as within sedentary limits. When the ALJ's decision is grounded in a mistake of fact such as this one, the court must remand. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996). *See also, Nazifi v. Colvin*, No. 13 C 5728, 2015 WL 859600, at *4 (N.D. Ill. Feb. 26, 2015) (ALJ mischaracterized physician's assessments as finding plaintiff capable of performing sedentary and light work, even though physician was not offering such an opinion); *Tasha C. v. Saul,* No. 18-CV-4677, 2019 WL 6877190, at *6-7 (N.D. Ill. Dec. 17, 2019) (remanding because "the ALJ mischaracterized the record" as to the opinions of two treaters); *Barbara B. v. Kijakazi*, No. 20 CV 547, 2021 WL 5937766, at *4 (N.D. Ill. Dec. 16, 2021) (remanding where ALJ mischaracterized important evidence in treating source opinion).

This mischaracterization was compounded by the ALJ's refusal to adopt the sit/stand option in APRN Wolken's assessment because such a limitation was not included in the consultative examiner's opinion. (R. 23.) However, even if the consultative examiner's stray remark that the "claimant is able to sit and stand" was an actual medical source statement, it was silent as to the duration of the sitting

5

and standing. (R. 689.) Nor does this "statement" by the consultative examiner's mention whether Plaintiff would require any periods to alternate between sitting and standing. (*Id.*)

The Commissioner argues that the ALJ's decision as a whole "shows unremarkable findings of strength throughout the rest of [Plaintiff's] body, as well as normal sensation and reflexes," which is "inconsistent with the allegation that plaintiff 'needs a sit/stand option.'" (Dkt. 20, p. 3.) Not only does strength appear to have no direct correlation to one's ability to sit or stand, but the Commissioner's analysis essentially asks the Court to rely on the ALJ's earlier narrative summary of the medical evidence as support for the ALJ's rejection of the sit/stand option in APRN Wolker's opinion when these medical findings were not specifically cited by the ALJ when rejecting this portion of the opinion. Although Courts are advised to read ALJ's decisions holistically, this approach will not suffice in all scenarios. *Steven H. v. Kijakazi*, No. 20-CV-50181, 2022 WL 972328, at *4 (N.D. Ill. Mar. 31, 2022) (relying on the ALJ's earlier narrative summary in decision would require speculation because it is unclear what to make of the narrative); *Sara N. v. Saul*, No. 20 CV 50006. 2021 WL 4712711, at 3 (N.D. Ill. Jan. 11, 2021), *3 ("[W]e can make educated guesses about what the ALJ was implying [in the narrative summary], but they are still guesses in the end."). This is one such scenario. While the Commissioner points to normal physical examination findings in support of the ALJ's rejection of a sit/stand option, the Commissioner (and the ALJ) sidestepped other abnormal examination findings.[5] The Court is ill-equipped to determine, without an explanation by the ALJ, how the ALJ weighed the normal findings against the abnormal findings to reach his conclusion regarding a sit-stand option. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010) ("ALJ must explain why he does not credit evidence that would support strongly a claim of disability, or why he concludes that such

---

[5] The Commissioner points to the following normal examination findings: "mild degenerative changes in the lumbar spine;" "imaging of the feet [inconsistent] consistent with any specific diagnosis;" and examination findings of normal strength throughout the rest of Plaintiff's body, as well as normal sensation and reflexes." (Dkt. 20, p. 3.) Plaintiff points to the following abnormal examination findings: reduced motor strength; positive straight leg raise; limited range of motion; positive facet loading; tenderness; limping gait; and bilateral foot pain. (Dkt. 21, p. 4.)

6

evidence is outweighed by other evidence."); *see also*, *e.g.*, *Pamela B. v. Saul*, No. 2:20-CV-340, 2021 WL 2411391, at *5 (N.D. Ind. June 14, 2021) ("ALJ summarized evidence both in support of and against a finding of disability [but failed to] explain why evidence of normal findings were more probative than evidence supporting a finding of disability."). Further, APRN Wolken's opinion was not the only nonsubjective evidence supporting Plaintiff's difficulties with prolonged sitting and/or standing. (*See*, *e.g.*, R. 1662, 1851, 2015, 2173). In sum, the Court finds the ALJ incompletely addressed the sit/stand portion of APRN Wolken's opinion as was required of him.

Finally, the ALJ failed to analyze the issue of absenteeism in his decision. While the ALJ did mention APRN Wolken's opinion Plaintiff would "miss four days per month," and the reader can fairly assume this was a portion of APRN Wolken's opinions the ALJ found non-persuasive (R. 23), the ALJ never actually addressed his reasoning behind this rejection. And a mere mention or summary is not the same as analysis. *Chuk v. Colvin*, No. 14 C 2525, 2015 WL 6687557, at *8 (N.D. Ill. Oct. 30, 2015). To the contrary, some analysis is required: consistency and supportability "are the most important factors [ALJs] consider when we determine how persuasive we find a medical source's medical opinions…to be," and, "[t]herefore [ALJs] will explain how [they] considered the supportability and consistency factors for a medical source's medical opinions…in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). The ALJ failed to explain how APRN Wolken's opinion on Plaintiff's level of absenteeism was or was not supported by or consistent with other evidence of record.[6] Such analysis was crucial here because the ALJ himself solicited testimony from the vocational expert that missing only two days per month would preclude competitive employment. (R. 59.) The ALJ must have believed Plaintiff might be absent at least a certain percentage of the time to have posed that

---

[6] Notably, APRN Susan Niezgoda opined Plaintiff would miss work two times per month due to mental impairments. (R. 672.) The ALJ also failed to mention or analyze APRN Niezgoda's (whom the ALJ identifies as Sjfan Niezgoda) opinions on absenteeism, whether alone or in conjunction with APRN Wolken's opinion, although the ALJ did address her opinions on impaired attention and concentration affecting Plaintiff 16-20% of the day. (R. 23-24.)

hypothetical to the vocational expert. *See*, *e.g.*, *Gregory W. v. Saul,* No. 19 CV 6848, 2020 WL 4816075, at *5 (N.D. Ill. Aug. 18, 2020). Yet, the ALJ neglected to offer any analysis of absenteeism, meaning that there is no logical bridge for the Court to follow on this topic. *Id.*; *see*, *also*, *e.g.*, *Jacob D. v. Kililo Kijakazi*, No. 20-CV-0554, 2021 WL 3674610 at *5 (N.D. Ill. Aug. 19, 2021). Thus, APRN Wolken's opinions on absenteeism were not insignificant and should have been addressed by the ALJ.

For these failures in addressing APRN Wolken's opinions (and the failure to address absenteeism in both APRN Wolken and APRN Niezgoda's opinions), the Court must remand the ALJ's decision for further analysis.

**4.     Conclusion**

For the foregoing reasons, the Court reverses and remands for further proceedings consistent with this Memorandum Opinion and Order. The Court declines to reach a decision on any other grounds raised by Plaintiff. Plaintiff's Motion for Summary Judgment (Dkt. 18) is GRANTED and Defendant's motion (Dkt. 19) is DENIED.

**ENTERED: January 30, 2024**

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge